# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JONATHAN CORBIN, and KATHLEEN CORBIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MEDICREDIT, INC.,<br><br>Defendant. | Case No: 2:19-cv-02157<br><br>JURY DEMAND |

## COMPLAINT – CLASS ACTION

NOW COME the Plaintiffs, JONATHAN CORBIN and KATHLEEN CORBIN, by and through their attorneys, SMITHMARCO, P.C., suing on behalf of themselves and all others similarly situated and for their complaint against the Defendant, MEDICREDIT, INC., the Plaintiffs state as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq. and the Electronic Funds Transfer Act (hereinafter, "EFTA"), 15 U.S.C. §1693, et seq.

### II. JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., the EFTA, 15 U.S.C. §1693 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.     PARTIES

4. JONATHAN CORBIN, (hereinafter, "Jonathan") is an individual who was at all relevant times residing in the City of Overland Park, County of Johnson, State of Kansas.

5. KATHLEEN CORBIN, (hereinafter, "Kathleen") is an individual who was at all relevant times residing in the City of Overland, County of Johnson, State of Kansas.

6. The debt that Jonathan and/or Kathleen was allegedly obligated to pay was a debt allegedly originally owed by Jonathan and/or Kathleen to Menorah Medical Center (hereinafter, "the Debt").

7. The debt that Jonathan and/or Kathleen allegedly owed Menorah Medical Center was for medical services provided to Kathleen.

8. At all relevant times, Plaintiffs were "consumers" as that term is defined by 15 U.S.C. §1692a(3).

9. At all relevant times, Plaintiffs had an account in their name at CAPITOL FEDERAL SAVINGS BANK (hereinafter, the "CapFed Account").

10. At all relevant times, the account held by Plaintiff at CapFed was an asset account established to hold funds used primarily for Plaintiffs' personal use and/or household expenditures.

11. At all relevant times, the CapFed Account held by Plaintiffs was an "account" as that term is defined by 15 U.S.C. §1693a(2).

12. At all relevant times CapFed was a financial organization responsible for holding funds in an account belonging to Plaintiffs.

13. At all relevant times, CapFed was a "financial institution" as that term is defined by 15 U.S.C. §1693a(9).

14. MEDICREDIT, INC., (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Kansas. Defendant's principal place of business is located in the State of Tennessee. Defendant is incorporated in the State of Kansas.

15. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

16. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

17. During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

18. At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

19. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

### IV.   GENERAL ALLEGATIONS

20. Prior to November of 2018, Kathleen visited Menorah Medical Center in Overland Park, Kansas.

21. Plaintiffs were never billed or contacted by Menorah Medical Center regarding the aforementioned hospital visit, apparently due to the fact that Menorah Medical Center did not have proper contact information for Plaintiffs.

22. In or around November of 2018, Menorah Medical Center referred the Debt to Defendant for collection from Plaintiffs and Defendant then contacted Plaintiffs regarding the Debt.

23. Plaintiffs and Defendant agreed to settle the entire balance of the Debt for a one-time payment by Plaintiffs of $318.79.

24. On or about November 25, 2018, as agreed, Plaintiffs drafted, signed, and mailed Defendant a check for $318.79. The check was numbered 3039 and referenced account number ending 2997 in the memo line.

25. On or about November 29, 2018, Defendant received Plaintiffs' check number 3039 for $318.79.

26. Also, on or about November 29, 2018, Defendant used the information contained on Plaintiffs' check to prepare a second, electronic check from Plaintiffs' CapFed Account. This electronic check contained the same account number, routing number, and check number as the check that Plaintiffs mailed to Defendant, but the payment amount was listed as $832.80. The electronic check contained an electronic signature that reads "Menorah Medical Center." Under the signature line stated "by MENORAH MEDICAL CENTER as authorized signature for JOHN AND KADIE CORBIN."

27. Neither of the Plaintiffs had ever authorized Menorah Medical Center to sign any checks on their behalf.

28. At some time between November 29, 2018 and December 3, 2018, Defendant presented the check for $318.79 to its bank and the same amount was withdrawn from Plaintiffs' CapFed Account.

29. At some time between November 29, 2018 and December 3, 2018, Defendant, using the electronic check that it had created, also withdrew $832.80 from Plaintiffs' CapFed Account.

30. The transfer of $832.80 from Plaintiffs' CapFed Account that was initiated by Defendant on or about November 29, 2018, was initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape.

31. The transfer of $832.80 from Plaintiffs' CapFed Account that was initiated by Defendant on or about November 29, 2018, was an "electronic fund transfer" as that term is defined by 15 U.S.C. §1693a(7).

32. On or about December 3, 2018, the balance in Plaintiffs' checking account from which both checks were drawn was $697.06.

33. On or about December 3, 2018, both of the aforementioned checks – the one sent to Defendant by Plaintiffs and the one created by Defendant on its own – were drawn against Plaintiffs' bank account. Additionally, a third check in the amount of $80.00, but unrelated to Defendant, was drawn against Plaintiffs' bank account.

34. Because Plaintiffs' checking account only had sufficient funds to cover the two checks that Plaintiffs had authorized, but not the electronic check created by Defendant, Plaintiffs' bank account became overdrawn and Plaintiffs were assessed a fee of $8.00 to transfer funds from another account.

35. Moreover, Plaintiffs were subsequently assessed to insufficient funds (or NSF) fees of $32.00 each because two checks had been drawn on the account while it had a negative balance.

## V.     CLASS ALLEGATIONS

36.     Plaintiffs bring this action individually and on behalf of multiple classes of individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.

37.     The aforementioned classes of individuals (collectively referred to as the "Classes") are defined as:

> a. all persons from whom Defendant collected funds in excess of the amount such persons authorized Defendant to collect during the applicable statute of limitations. (hereinafter sometimes referred to as the "FDCPA Class").
>
> b. All persons from whom Defendant collected funds via an electronic fund transfer from an "account" as defined by 15 U.S.C.§1693a(2) without first obtaining authorization from the person to perform said transfer and without notifying such person that such transfer would or may be processed as an electronic fund transfer. (hereinafter sometimes referred to as the "EFTA Class").

38.     The Classes are so numerous that joinder of all members is impractical. Upon information and belief, Defendant has collected funds in excess of amounts authorized by consumers and has performed electronic funds transfers from myriad consumer "accounts" as that term is defined by 15 U.S.C.§1693a(2) without first obtaining authorization from the person to perform said transfer and without notifying such person that such transfer would or may be processed as an electronic fund transfer. Given the aforementioned conduct across the potential class, there exists a presumption of numerosity.

39.     Questions of law and fact common to the Classes predominate over any questions affecting only individual Class members. The principal questions at issue are:

> a. Whether Defendant collected funds from consumers in excess of amounts authorized by such consumers, and

      b. Whether Defendant violated the EFTA by performing electronic fund transfers without first obtaining authorization from the person to perform said transfer and without notifying such person that such transfer would or may be processed as an electronic fund transfer.

40. Plaintiffs' claims are typical of the claims for the Classes, which arise from the same operative facts and are predicated on the same legal theories.

41. There are no individual questions of fact, other than whether a Class member did not authorize Defendant to perform an electronic funds transfer in the amount actually taken by Defendant and whether a Class member was provided with notice that a transfer would or may be treated as an electronic fund transfer, which can be determined by a ministerial inspection of Defendant's records.

42. Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs are committed to vigorously prosecuting this matter and have retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiffs nor counsel for Plaintiffs have any interests that might cause them to not vigorously pursue this claim.

43. This action should be maintained as a class action as the prosecution of separate actions by individual members of the Classes would create a substantial risk of inconsistent or varying adjudications with respect to individual Class members. Such a result would establish incompatible standards of conduct for the parties opposing the Classes. Furthermore, the prosecution of separate actions could result in adjudications of individual members' claims that could be dispositive of the interests of other members not parties to the adjudications or could substantially impair and/or impede the ability of such individuals to protect their interests.

44. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small as the maximum statutory damages in an individual action under both the FDCPA and EFTA are $1,000. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many class claims. The identities of individual Class members may be easily obtained from Defendant's records.

45. As a result of the above violations of the FDCPA and EFTA, Defendant is liable to Plaintiffs and Class members for statutory damages, attorneys' fees and costs.

### COUNT I: VIOLATIONS OF THE FDCPA

46. Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

47. By creating an electronic check using the information from Plaintiffs' actual check without Plaintiff's knowledge, consent, or permission, and then withdrawing both amounts from Plaintiffs' CapFed Account, Defendant collected funds from Plaintiffs without having any lawful authority to do so.

48. In its attempts to collect the debt allegedly owed by Plaintiffs to Menorah Medical Center, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

   a. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f;

   b. Collected funds from Plaintiffs despite having no lawful authority to do so in violation of 15 U.S.C. §1692f(1);

   c. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

49. As a result of Defendant's violations as aforesaid, Plaintiffs have suffered, and continue to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

50. As a result of the above violations of the FDCPA, Defendant is liable to Plaintiffs and FDCPA Class members for statutory damages, attorneys' fees and costs.

## COUNT II: VIOLATIONS OF THE EFTA AND REGULATION E

51. Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

52. The EFTA, and Regulation E promulgated thereunder, prohibit the initiation of electronic funds transfers without first obtaining the account holder's authorization. 15 U.S.C. §1693b(a)(; 12 C.F.R. §205.3.

53. Defendant violated the EFTA and Regulation E by initiating or causing to be initiated an electronic funds transfer in the amount of $832.80 without first obtaining either Plaintiff's authorization.

54. Section 1693b(a) of the EFTA authorizes the Federal Reserve Board of Governors (the "Board") to prescribe regulations to carry out the purpose and provisions of the statute, which the board has done by promulgating Regulation E, 12 C.F.R. §205.

55. Regulation E provides, in relevant part, as follows:

§205.3 Coverage:

(b) Electronic fund transfer –

. . .
    (2) Electronic fund transfer using information from a check.

        (i) This part applies where a check, draft, or similar paper instrument is used as a source of information to initiate a one-time electronic fund transfer from a consumer's account. **The consumer must authorize the transfer**.

        (ii) The person initiating an electronic fund transfer using the consumer's check as a source of information for the transfer **must provide a notice that the transaction will or may be processed as an EFT, and obtain a consumer's authorization for each transfer**. A consumer authorizes a one-time electronic fund transfer (in providing a check to a merchant or other payee for the MICR encoding, that is, the routing number of the financial institution, the consumer's account number and the

serial number) when the consumer receives notice and goes forward with the underlying transaction. For point-of-sale transfers, the notice must be posted in a prominent and conspicuous location, and a copy thereof, or a substantially similar notice, must be provided to the consumer at the time of the transaction.

56. Defendant's initiation of an electronic transfer in the amount of $832.80 was neither authorized nor permitted by 12 C.F.R. §205.3 or 15 U.S.C. §1693b(a).

57. Defendant violated the EFTA and Regulation E because it initiated or caused to be initiated an electronic funds transfer in the amount of $832.80 from Plaintiffs' CapFed Account without first obtaining Plaintiffs' authorization to do so.

58. Neither Jonathan nor Kathleen never received any notice that he would be charged $832.80, or that such payment would or may be processed as an electronic fund transfer.

59. Neither Jonathan nor Kathleen have provided Defendant with any authorization, orally or in writing, to transfer $832.80 from Plaintiffs' CapFed Account to Defendant.

60. Defendant has not obtained any authorization, either orally or in writing, from either Jonathan or Kathleen to transfer $832.80 from Plaintiff's CapFed Account to Defendant.

61. Defendant has not provided either Jonathan or Kathleen with any form of notice that a payment of $832.80 will or may be processed as an electronic fund transfer.

62. Neither Jonathan nor Kathleen have informed Defendant that he or she waived his or her right to provide Defendant with written authorization to execute the transfer of funds from Plaintiff's CapFed Account to Defendant.

63. Defendant's conduct in violating the EFTA and Regulation E directly and proximately caused Plaintiffs to suffer damages as set forth in the paragraphs above.

64. Accordingly, Defendant violated the EFTA and Regulation E and is liable to both Plaintiffs and EFTA Class Members pursuant to section 15 U.S.C §1693m for their actual damages, plus statutory liquidated damages and attorneys' fees and costs.

## VI. JURY DEMAND

65. Plaintiffs hereby demand a trial by jury on all issues so triable.

66. The Plaintiffs, by and through their attorneys, SmithMarco, P.C., hereby respectfully requests that the trial of this matter proceed in Kansas City.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the members of the Classes, pray for judgment against Defendant as follows:

a. Certification of the proposed Classes;

b. Appointment of Plaintiffs as representatives;

c. Appointment of the undersigned counsel as counsel for the Classes;

d. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violated the FDCPA and EFTA;

e. An order enjoining Defendant and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

f. An award to Plaintiffs and the Classes of damages, as allowed by law;

g. An award to Plaintiffs and the Classes of attorneys' fees and costs, as allowed by law and/or equity;

h. Leave to amend this Complaint to conform to the evidence presented at trial; and

i. Orders granting such other and further relief as the Court deems necessary, just, and proper.

Respectfully submitted,

**SMITHMARCO, P.C.**

Dated: March 26, 2019

By: ___s/ Mandy M. Shell___
Mandy M. Shell, KS Bar # 23410
1656 Washington St., Ste. 120
Kansas City, Missouri 64108
Telephone:  (913) 879-1001

       Facsimile: (888) 418-1277
       E-Mail: mshell@smithmarco.com
       ATTORNEY FOR PLAINTIFFS